J-A29014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 915 WDA 2025 |

Appeal from the Order Entered June 24, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  No. 103 of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 916 WDA 2025 |

Appeal from the Order Entered June 25, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  No. 102 of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.D.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 917 WDA 2025 |

Appeal from the Order Entered June 24, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  101of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.T.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

                                    :
                                    :
                                    :
APPEAL OF: M.A.A., MOTHER           :
                                    :
                                    :
                                    :
                                    :
                                    :    No. 918 WDA 2025

Appeal from the Order Entered June 24, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  100 of 2024

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                        **FILED: March 9, 2026**

Appellant, M.A.A. ("Mother"), appeals from the orders that involuntarily terminated her parental rights to twelve-year-old G.T.N., nine-year-old J.D.C, four-year-old S.R.A, and three-year-old N.R.A (collectively, "Children"), pursuant to 23 Pa.C.S. § 2511(a) and (b).  Upon review, we find that the record is devoid of clear and convincing evidence to terminate parental rights pursuant to Section 2511(b) and, therefore, we are constrained to vacate and remand for further proceedings.

The following procedural and factual history is relevant to this appeal. Mother has an extensive history with child welfare agencies in various counties due to illegal drug use, homelessness, and child neglect.  Mother has a total of thirteen children, eleven of whom have been removed from her care. Regarding the subjects of this appeal, W.B. is the putative father of G.T.N.; B.F. is the putative father of J.D.C.; and R.W.A., III ("Father") is the biological father of S.R.A. and N.R.A.  Mother and Father are engaged in an on-again, off-again romantic relationship.  The Westmoreland County Children's Bureau

("the Agency") has been involved with the family since March of 2020 due to numerous referrals regarding Mother and Father's illegal drug use, lack of supervision of Children, and inadequate housing. On June 23, 2023, the trial court adjudicated Children dependent and implemented court-ordered supervision after Mother refused to cooperate with services. On June 28, 2023, the Agency obtained emergency custody after Children, ranging in age from infant to nine years old, were spotted at a local Dollar General Store without adult supervision begging for food. The two youngest children were left outside the store in strollers with soiled diapers. Video surveillance showed the older children attempting to open cans of food in the store and one of the older children smoking a vape pen. Children all exhibited extremely poor hygiene. Notably, Children all tested positive for cocaine and/or methamphetamines, presumably from drug residue in Mother's home. Children were placed in foster care.

Mother was ordered to comply with random drug screens, undergo a drug and alcohol evaluation and comply with recommendations, participate in recommended parenting classes, maintain stable, appropriate and clean housing, and maintain a legal and verifiable source of income.

The trial court held regular permanency review hearings and consistently found Mother's compliance to be minimal. On November 22, 2024, the Agency filed petitions to involuntarily terminate Mother's parental rights to Children. The trial court appointed Adam H. Andre, Esq., to serve as legal counsel for oldest child G.T.N. The trial court appointed Emily K.

Trisoline, Esq., to serve as guardian *ad litem* ("GAL") for Children as well as legal counsel for J.D.C., S.R.A., and N.R.A., after finding there was no conflict in Attorney Trisoline serving in the dual role.

The trial court held hearings on May 1, 2025, and May 29, 2025. With regards to Mother, the Agency presented testimony from Jean DeFilippis, owner of ARC Point Labs; Jena Clair, visitation supervisor at UPMC Western Behavior Health at Mon-Yough; and Karyl Piper, Agency caseworker.

In sum, Ms. DeFilippis testified that her company attempted to screen Mother for drug and alcohol 262 times and that 175 attempts were unsuccessful. Additionally, Ms. DeFilippis testified that Mother refused to comply on eight occasions and tested positive 29 times for unprescribed substances, including cocaine and methamphetamine. Ms. DeFilippis explained that testing was on hold from January 15, 2025, until March 11, 2025, while Mother attended an inpatient drug and alcohol treatment program. Following treatment, Mother tested positive for cocaine on April 8, May 1, and May 15, 2025, including right before the initial termination of parental rights hearing. Ms. DeFilippis testified that Children were tested for illegal substances one and two days after being removed from Mother's care. S.R.A and N.R.A. tested positive for methamphetamine and cocaine, J.D.C. and G.T.N. tested positive for cocaine. She explained that the tests showed that Children were exposed to these substances more than once in the three-month period prior to Children's removal from Mother's care.

Dr. O'Malley conducted an interactional evaluation between Mother and Children in July of 2023 when Children first came into the custody of the Agency. Dr. O'Malley testified that he rated Mother's "insight and judgment" as "poor" due to Mother's denial of her substance abuse and lack of concern regarding Children's development. N.T. Hr'g, 5/1/25, at 48. Dr. O'Malley testified that the three youngest children were affectionate with Mother, who reciprocated. Dr. O'Malley noted safety concerns during the evaluation when J.D.C. and S.R.A. were walking on tables and the couch in the visitation room repeatedly, which Mother addressed "at times." *Id.* Following the evaluation, Dr. O'Malley recommended that Mother receive parenting instruction, drug and alcohol treatment, and that Mother's visits remain supervised.

Ms. Clair testified that she supervised visits between Mother and Children and that Mother attended 56 out of the 174 total offered visits. Ms. Clair explained that Mother was often late for visits, left early on four occasions, and would often confirm multiple times and then fail to show at the visits. Ms. Clair testified that when Mother did attend visits, she would spend 30 to 45 minutes in the kitchen preparing food for Children rather than interacting with them. Ms. Clair explained that it was a "challenge" for Mother to manage Children, that Mother failed to provide equal attention to Children, that Mother failed to notice safety concerns such as the two younger children leaving the visitation room and/or putting objects in their mouths. Ms. Clair testified that Mother struggled to respond emotionally to Children and often made unfulfilled promises to Children, for example promising to bring a cake

and presents for their birthdays and then missing several visits. Ms. Clair reported that Children were more affectionate with Mother when visits were consistent, and that their excitement at seeing her "wore off a little bit" as "gaps between visits increased." *Id.* at 82. Ms. Clair informed the court that Mother failed to visit Children following her discharge from drug rehabilitation in February 2025 until the day before the hearing on April 1, 2025, and that Mother never progressed from supervised visitation.

Ms. Clair testified that she also provided parenting instruction to Mother. Ms. Clair reported that Mother failed to attend most sessions and only attended 26 out of the 103 sessions that Ms. Clair offered.

Ms. Piper testified that she could not recommend that Mother's visits be changed to unsupervised due to Mother's significant parenting deficits, lack of supervision during visits, safety concerns, and Mother's ongoing illegal drug use. Ms. Piper informed the court that Mother was currently living with her mother, Children's maternal grandmother, and that Mother had reported numerous housing leads to the Agency, none of which were able to be verified. Ms. Piper testified that Mother did not have a verifiable source of income, but that she sometimes sold illegal drugs when she was "low on money." *Id*. at 183. Ms. Piper testified that Mother's parental rights to six other children were involuntarily terminated and that Mother had a criminal history that included a conviction for three counts of Engaging the Welfare of Children. Ms. Piper testified that termination of parental rights would best serve the needs and welfare of Children because Mother had made "minimal to no" progress

towards reunification despite the Agency offering 32 months of service, including 9 months of supervision prior to Children being placed. *Id.* at 205.

Ms. Piper testified that Children are all placed in pre-adoptive foster homes with oldest child G.T.N. in one home and the other three children in another home. Ms. Piper testified that the foster parents are meeting Children's needs. She explained that G.T.N. and J.D.C. receive therapeutic services at school and in the community and that S.R.A. and N.R.A. are involved in an early head start program. She testified that Children are up to date with all necessary medical appointments and attend school regularly. Ms. Piper testified that the foster families meet all of Children's "needs developmentally, physically, and emotionally" and Children are all "observed to have a close relationship with their foster families[.]" *Id.* at 208. Ms. Piper testified, "[a]ll [C]hildren are observed to be happy, healthy. They're doing well. . . . Previously on occasion there would be some behavioral concerns after visits [but] since the parents are visiting minimally, if at all, there have been no behaviors reported." *Id.* at 209.

Mother testified that she lived in her mother's house with Father, who is her fiancé, and her children 16-year-old D.R. and 17-year-old S.R.[1] Mother testified that she recently applied for housing and expects to have her own housing in the next month. Mother testified that she is not currently employed. Mother explained that she has had several interviews and can get

_____

[1] D.R. and S.R. are not subjects of this appeal.

her job back at McDonalds at any time but that she did not want to start working until she moved to her new housing. Mother testified that visits with Children go well and Children cry when they must leave. She further testified that during visits they paint, color, read books, and eat food that she brings and prepares. Mother informed the court that she attended inpatient drug and alcohol treatment at Cove Forge in February of 2025 and was successfully discharged. Mother explained that she is currently in treatment at Crossroads, where she receives a sublocade injection every month. Mother testified that her drug and alcohol screens at Crossroads were negative on March 11, March 25, and April 1, 2025, and she submitted paper copies of the screening results as exhibits. **See** Mother's Exhibit B. Mother testified that she is seeking outpatient treatment at both SPHS and Greensburg Drug and Alcohol Center, but the providers cannot accommodate her. Mother stated that she plans to find an outpatient drug and alcohol provider once she moves to her new housing. Mother testified that she loves Children and wants to be reunified with them. Mother stated, "I made a lot of mistakes in my past, and I'm not – I'm sorry for that. I am not perfect by any means. Sorry. But I know I'm doing my best and that's all I can do." N.T. Hr'g, 5/29/25, at 42.

Attorney Andrae represented to the court that G.T.N. wishes to remain in his current foster home if he is not returned to Mother.

On June 24, 2025, the court issued an order and opinion involuntarily terminating Mother's parental rights to Children pursuant to Sections

2511(a)(2), (a)(5), (a)(8), and (b) of the Adoption Act.[2] Children's GAL agreed with this disposition.

Mother timely appealed. Mother complied with Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion relying on its June 24, 2025, order and opinion.

Mother raises the following issues for our review:

I.      Whether the honorable trial court erred in finding clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(2)?

II.     Whether the honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(5)?

III.    Whether the honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(8)?

IV.     Whether the honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(b)?

Mother's Br. at 4-5 (some capitalization omitted).

In cases involving the involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580,

---

[2] The trial court terminated the parental rights of Father, who pursued a separate appeal at Docket Nos. 913 WDA 2025 and 914 WDA 2025. The court also terminated the parental rights of Children's respective putative fathers.

591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing

evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** at 592 (citations and internal quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "[I]nitially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of his or her pareK.ntal rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. ***In re K.Z.S.***, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). "The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *Int. of K.M.W.*, 238 A.3d 465, 474 (Pa. Super. 2020).

"Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

Finally, sincere efforts to perform parental duties may still be insufficient to remedy an incapacity. *Id.* at 1117. This is because subsection (a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being[,]" especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *Id.* (citation omitted).

Instantly, the trial court found that Mother's continued refusal to consistently engage in drug and alcohol treatment has caused Mother to be

non-compliant with services and, in turn, caused Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being since June of 2023. The trial court acknowledged that Mother completed an inpatient drug and alcohol program but noted that Mother relapsed upon discharge. The court opined:

> Since the case was opened for services, Mother did not take sufficient corrective action to alleviate the concerns of the agency. Mother continues to struggle with substance abuse. On April 8, 2025, Mother tested positive for [c]ocaine during a random drug screen. Despite Mother's negative drug screens for March and April of 2025, as submitted under Mother's Exhibit B and proof of Mother's successful completion of Cove Forge's Rehabilitation program as evidenced through Mother's Exhibit "A", Mother tested positive on May 1, 2025 at the [t]ermination [h]earing for [c]ocaine which was confirmed by the lab. Mother tested positive for [c]ocaine and THC on May 14, 2025 as confirmed by the lab. . . . Substance abuse concerns remain a major hinderance to reunification.

Trial Ct. Op. for G.T.N., 6/24/25, at 12-13 (unpaginated).[3] The court emphasized that Mother failed to consistently visit Children, attend parenting classes, secure appropriate housing, or maintain employment.

> Mother failed to consistently participate in visits or parenting sessions with the child. No indication of Mother's ability to adequately parent the child has been evidenced since June of 2023. Mother remains unable to secure stable and appropriate housing for the child nor has Mother provided proof of employment to the caseworker. Mother's testimony mentioned that Mother could return to her job at McDonald's at any time and that Mother was on a waitlist for housing. Mother had almost two years to satisfy these requirements for reunification but never

---

[3] The trial court issued a separate opinion for each child. The trial court's findings regarding Mother are substantially similar even though the findings appear on slightly different pages in each opinion.

- 13 -

succeeded in doing so. Mother's compliance and progress never moved higher than a rating of minimal. As such, despite the numerous services offered to Mother to assist her with reunifying with [Children], the [c]ourt finds that the [A]gency has satisfied its burden with respect to Mother under this factor.

*Id.* at 12-13 (unpaginated).

Based on our review, we conclude that the court did not err in finding the Agency presented sufficient evidence to satisfy Section 2511(a)(2). The court heard undisputed testimony that Mother made minimal to no progress towards reunification with Children. N.T. Hr'g, 5/1/25, at 8. Mother failed to consistently engage in drug and alcohol treatment, attend parenting classes, obtain appropriate housing, and obtain employment. Most notably, Mother failed to consistently visit with Children and attended less than half of the scheduled visits. The record supports the trial court's findings that Mother refused to provide essential parental care for Children. Thus, we discern no abuse of discretion in the trial court's terminating Mother's parental rights to Children pursuant to Section 2511(a)(2).

* * *

With respect to Section 2511(b), our Supreme Court has recently explained that the "primary consideration must be the child's developmental, physical and emotional needs and welfare." *Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citing 23 Pa.C.S. § 2511(b); some quotation marks omitted). "Notably, courts should consider the matter from the child's perspective, placing [his or] her developmental, physical, and emotional

needs and welfare above concerns for the parent." *Id.* This determination must be made on a case-by-case basis with the court considering each child's special needs. *Id.* at 1105-1106. Our Supreme Court has interpreted the "emotional needs and welfare of the child . . . to include intangibles such as love, comfort, security, and stability." *T.S.M.*, 71 A.3d at 267 (citation and internal quotation marks omitted). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent "does not preclude the termination of parental rights." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. *Id.* at 898. In other words, "[c]ourts must determine whether the trauma caused by breaking that bond is outweighed by the benefit of moving the child toward a permanent home." *T.S.M.*, 71 A.3d at 253. "Moreover, by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain."

- 15 -

***K.T.***, 296 A.3d at 1110–11. "Therefore, to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." ***Id.*** at 1114.

"The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care []; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." ***Id.*** at 1113.

Mother avers that the trial court erred when it terminated her parental rights pursuant to Section 2511(b). Mother's Br. at 29. Mother argues that the Agency failed to meet its burden of demonstrating that Children and Mother do not have a bond or have a negative bond. ***Id.*** at 33. Mother argues that the evidence demonstrates that Children do have a bond with Mother, and the trial court failed to address the impact of severing the bond between Mother and Children. ***Id.*** at 31. Finally, Mother argues that the trial court failed to make any findings regarding whether Children have a bond with their current foster family. ***Id.*** at 32.

Our review of the trial court's Section 2511(b) analysis reveals that the court focused entirely on Mother's substance abuse and her lack of progress toward reunification, rather than the needs and welfare of each child to determine if termination of Mother's parental rights was in Children's best

interest. The court failed to make any findings regarding each child's bond with Mother and, if one exists, the impact of severing that bond; each child's need for permanency; each child's bond with their foster family; and each child's needs and welfare within the foster home. Moreover, the record lacks clear and convincing evidence in this regard.

Accordingly, we are constrained to vacate the orders terminating Mother's parental rights to Children. We remand for the court to hold a hearing forthwith upon remittal of the certified record for the parties to present evidence regarding the "developmental, physical and emotional needs and welfare" of each child pursuant to Section 2511(b), including evidence regarding parent-child bond. The trial court shall then conduct a proper analysis pursuant to 23 Pa.C.S. § 2511(b) as described *supra*.

Orders vacated. Case remanded for proceedings consistent with this decision after receipt of the certified record, which we direct the Prothonotary to remit immediately. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/09/2026